UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

PAUL R. HAYDEN,

                              Plaintiff,

        v.                                              **DECISION AND ORDER**
                                                        05-CV-294S

ALAN G. HEVESI, Comptroller of the
New York State Employees' Retirement System,

PATRICK GALLIVAN, Sheriff of Erie County,

H. McCARTHY GIPSON, Superintendent of the
Erie County Holding Center and Jail Management Division
of the Erie County Sheriff's Department,

                              Defendants.

## I. INTRODUCTION

        Plaintiff, Paul R. Hayden ("Plaintiff"), through counsel, brought an action pursuant

to 42 U.S.C. § 1983 alleging that Defendants, while acting under color of law, deprived him

of his property interest in disability retirement benefits without due process of law. He

seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202. (Docket

No. 1.)

        Defendants, sued both individually and in their official capacity, are the former

Comptroller for the State of New York ("Hevesi"), the Sheriff for the County of Erie

("Gallivan"), and the Superintendent of the Erie County Holding Center and Jail

Management Division of the Erie County Sheriff's Department ("Gibson").[1] Where

appropriate, Gallivan and Gibson shall be collectively referred to as "the County

---

        [1] To the extent that the Defendants were sued in their official capacities, all have been replaced by
successors in office. Comptroller Hevesi has been replaced by Thomas P. DiNapoli; Sheriff Patrick
Gallivan has been succeeded by Timothy B. Howard; Superintendent Gibson has been replaced by Robert
Koch.

Defendants".

On February 11, 2007, this Court (Elfvin, J.) dismissed the First, Second, and Third causes of action in the Complaint (Docket No. 17).[2]

Presently before this Court are the Defendants' Motions for Summary Judgment. (Docket Nos. 34, 39).[3]

For the reasons that follow, Hevesi's motion for summary judgment (Docket No. 34) is granted, as is the County Defendants' motion for summary judgment (Docket No. 39).

## II. BACKGROUND

### A.     Facts

The following facts are not in dispute. Plaintiff was employed at the Erie County Holding Center (a division of the Erie County Sheriff's Department) as a Civil Service Deputy Sheriff Officer from December, 1985. (Complaint, (Docket No. 1) ¶ 15.)  On May 7, 1999, Plaintiff was injured in an automobile accident, and was placed on unpaid medical leave shortly thereafter. (Id., ¶ 16-17.)

On or about July 27, 2000, Plaintiff received a letter from his employer advising him that his employment, pursuant to New York State Civil Service Law § 73[4], would terminate

---

[2] In the same Decision and Order, this Court also dismissed the County Defendants' cross-claim against Hevesi for indemnification and contribution. (Docket No. 11.)

[3] Defendant Hevesi has filed a memorandum of law and a Rule 56 Statement of Undisputed Facts with exhibits in support of his summary judgment motion. (Docket Nos. 35-37). The County Defendants have filed a memorandum of law, a Rule 56 Statement, and a reply brief. (Docket Nos. 40-41, 52.)   In opposition, Plaintiff has filed affirmations opposing the motion for summary judgment by Christen Archer Pierrot, Esq. and Paul R. Hayden, a Rule 56 Statement, and memorandum of law (Docket Nos. 47-50.)

[4] "When an employee has been continuously absent from and unable to perform the duties of his position for one year or more by reason of a disability . . . his employment status may be terminated and his position may be filled by a permanent appointment. Such employee may, within one year after the termination of such disability, make application to the civil service department or municipal commission having jurisdiction over the position last held by such employee for a medical examination to be conducted

on August 1, 2000. The letter indicated that he could be reinstated to his position within one year of his termination. It did not provide notice of Plaintiff's right to apply to the New York State and Local Retirement System ("NYSLRS") of the Office of the State Comptroller for disability retirement benefits. Specifically, the letter did not state that he had twelve (12) months from August 1, 2000, to make a timely application for a disability retirement allowance. (Id., ¶¶ 18-20.)

On September 3, 2000, Plaintiff received a check from the Sheriff's Department dated September 1, 2000, reflecting a pay period ending August 25, 2000. (Id., ¶ 23.)

## B. Procedural History

On August 28, 2001, Plaintiff applied for disability retirement benefits pursuant to New York Retirement and Social Security Law, Article 15 § 605 ("Article 15 application"). (Id., ¶ 28.) Plaintiff's application was denied by the State Comptroller's Office on May 2, 2002, as untimely, and the merits of his application were not reached. (Id., ¶ 31; Record on Review (Docket No. 37-2) at 68.)

Plaintiff sought an administrative hearing for redetermination of his Article 15 application, which was held on October 15, 2003 before Hearing Officer John Rogowski. On September 18, 2004, Hearing Officer Herbert R. Johnson, Jr., upheld the determination of the State Comptroller that Plaintiff's application was untimely.[5]

---

by a medical officer selected for that purpose by such department or commission. If, upon such medical examination, such medical officer shall certify that such person is physically and mentally fit to perform the duties of his former position, he shall be reinstated to his former position, if vacant, or to a vacancy in a similar position or a position in a lower grade in the same occupational field in his former department or agency." N.Y. Civil Service L. § 73.

[5] While a decision in Plaintiff's matter was pending, the original hearing officer retired from the New York State Retirement System. Herbert R. Johnston, Jr., was appointed to replace Judge Rogowski and decide the redetermination upon reviewing the memoranda of law and transcript of the hearing.

(Complaint, ¶ 34; Record on Review at 28-32, 45-63.)

On October 14, 2004, a final determination was issued by the State Deputy Comptroller accepting the Hearing Officer's findings and denying Plaintiff's application. (Complaint, ¶ 37; Record on Review at 26-27.)

Plaintiff then commenced a proceeding pursuant to Article 78 of the New York Civil Practice Law and Rules on January 27, 2005 in Albany County Supreme Court, in which he named Alan G. Hevesi as the sole respondent, and asked the court to vacate the Comptroller's determination denying him disability retirement benefits. That matter was transferred to the Appellate Division, Third Department. (Record on Review at 3-7, 14-20.) The Third Department dismissed Plaintiff's Article 78 petition on September 28, 2006. Hayden v. Hevesi, 32 A.D.3d 1125 (3rd Dept. 2006).

While Plaintiff's Article 78 petition was pending in state court, he commenced this action pursuant to 42 U.S.C. § 1983 alleging violations of his rights under the Fourteenth Amendment of the U.S. Constitution on the ground that the Defendants deprived Plaintiff of his property interest in his disability retirement allowance without due process of law. In his Complaint, Plaintiff set forth four causes of action: (1) that Defendants failed to provide him with notice of the time limitations within which he was to apply for disability retirement benefits;  (2) Defendants failed to provide him with unambiguous and certain notice of the actual termination of his employment upon which he could reasonably calculate his time within which to apply for disability retirement benefits; (3) New York State Civil Service Law § 73 is unconstitutional on its face and as applied because it does not require that an

_____

(Record on Review at 29.)

employer give the aforementioned time limitation notice to an employee upon termination of their employ; and (4) the County Defendants failed to provide accurate and correct information to the State Comptroller's Office regarding Plaintiff's employment, causing undue delay to the processing of his application. Plaintiff also alleged that Defendant Hevesi failed to provide him with a prompt hearing by a fair and informed hearing officer, and did not provide him with a timely decision following his administrative hearing.

On February 11, 2007, this Court issued a decision dismissing the first, second, and third cause of action as time-barred, leaving in place only the Complaint's fourth cause of action.

For the reasons that follow, Defendants' motions for summary judgment are both granted.

### III. DISCUSSION

**A.    Summary Judgment**

Federal Rule of Civil Procedure 56 provides that summary judgment is warranted where "the pleadings, the discovery and disclosure material on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under governing law." Id.

In deciding a motion for summary judgment, the evidence and the inferences drawn from the evidence must be "viewed in the light most favorable to the party opposing the

5

motion." <u>Addickes v. S.H. Kress and Co.</u>, 398 U.S. 144, 158-59 (1970). Summary judgment is proper "only when reasonable minds could not differ as to the import of evidence." <u>Bryant v. Maffucci</u>, 923 F.2d 979, 982 (2d Cir. 1991). The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 249.

**B.      42 U.S.C. § 1983**

Civil liability is imposed under 42 U.S.C. § 1983 only upon persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and laws. <u>See</u> 42 U.S.C. § 1983. On its own, § 1983 does not provide a source of substantive rights, but rather, a method for vindicating federal rights conferred elsewhere in the federal statutes and Constitution. <u>See</u> <u>Graham v. Connor</u>, 490 U.S. 386, 393-94 (1989) (quoting <u>Baker v. McCollan</u>, 443 U.S. 137, 145, n.3 (1979)). Accordingly, as a threshold matter in reviewing claims brought pursuant to § 1983, it is necessary to precisely identify the constitutional violations alleged. <u>See</u> <u>Baker</u>, 443 U.S. at 140.

The Second Circuit has held that "municipal employee retirement benefits are constitutionally protected property," and that "[t]he entitlement to disability retirement is a constitutionally protected property interest for purposes of Section 1983." <u>Russell v. Dunston</u>, 896 F.2d 664, 668-69 (2d Cir. 1990) (citing, <u>inter alia</u>, <u>Bd. of Regents v. Roth</u>, 408 U.S. 564, 577 (1972)); <u>see also</u> <u>Winston v. City of New York</u>, 759 F.2d 242, 247-49 (2d Cir. 1985) (holding that municipal employee retirement benefits are protected); <u>Basciano v. Herkimer</u>, 605 F.2d 605, 609 (2d Cir. 1978) (holding that employee's interest in accident disability retirement benefits are a constitutionally protected property interest); <u>Weaver v. New York City Employees' Retirement Sys.</u>, 717 F.Supp. 1039, 1043 (S.D.N.Y. 1989)

6

(same, as to municipal employee retirement benefits).

## C.   Defendant Hevesi

Defendant moves for summary judgment on the grounds that Hevesi was not personally involved in the complained-of acts and that the action is precluded by the doctrines of res judicata and Rooker-Feldman. (Docket No. 36.)

### 1.   Rooker-Feldman Doctrine

Because a Rooker-Feldman challenge raises the issue of whether the Court has subject matter jurisdiction to adjudicate the action, the Court addresses this argument first.

Pursuant to the Rooker–Feldman doctrine, federal district courts lack subject matter jurisdiction over suits that are "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005); see Rooker v. Fidelity Trust Co., 263 U.S. 413, 414–415 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983). The Rooker–Feldman doctrine applies if: (1) the federal court plaintiff lost in state court; (2) the plaintiff's alleged injuries are caused by the state court judgment; (3) the plaintiff's claims invite the district court to review and reject that state court judgment; and (4) the state court judgment was rendered prior to the commencement of the district court proceedings. Hoblock v. Albany County Bd. of Elections, 422 F.3d 77, 85 (2d Cir. 2005).

With regard to (2), the injury in question derives from the state court decision when that judgment causes or is the "source of the injury," as opposed to merely an affirmance

by the state court of a determination made by a third party that embodies the wrongful conduct alleged in the first instance. Hoblock, 422 F.3d at 87-88 ("[A] federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are *produced* by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it.") (emphasis added).

Under the Hoblock analysis, the "source of the injury" Plaintiff complains of arises in the first instance from the denial of disability retirement benefits by the State, and not from the Appellate Division's affirmance of that decision in his subsequent Article 78 proceeding. Stated another way, the state court did not cause or produce the injury for which Plaintiff seeks relief. Rather, the state court judgment merely "ratified, acquiested in, or left unpunished" the decision of the State Comptroller. See id. at 89. In any event, Plaintiff commenced the instant lawsuit before the Appellate Division reached disposition of his Article 78 petition, rendering Rooker-Feldman inapplicable for that reason alone. See id. at 88 ("the injury such a federal suit seeks to remedy cannot have been produced by a state-court judgment that did not exist at the federal suit's inception.").

While the instant cause of action is not defeated by the Rooker-Fedlman doctrine, ordinary state law principles of preclusion may still apply, as discussed below. See Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 293 (2005).

## 2. Claim Preclusion

"The preclusive effect of former adjudication, whether termed res judicata ("claim preclusion") or collateral estoppel ("issue preclusion") provides an appropriate basis for determination of a motion for summary judgment." Gould v. Newton, 802 F.Supp. 950, 953

(W.D.N.Y. 1992).

"Res judicata . . requires that a final judgment on the merits of an action be given preclusive effect, barring the parties as well as those in privity with them from relitigating in a subsequent action a claim which was or could have been raised in the prior suit. Marvel Characters, Inc. v. Simon, 310 F.3d 280, 286-87 (2d Cir. 2002). Courts in this circuit have generally held, however, that because money damages are not available in Article 78 proceedings, an unsuccessful Article 78 petitioner is not barred from bringing a subsequent claim for damages under § 1983. See, e.g., Vargas v. City of New York, 377 F.3d 200, 205 (2d Cir. 2004); Davidson v. Capuano, 792 F.2d 275, 278 (2d Cir. 1986).

"Under the transactional approach to res judicata adopted by New York, 'once a claim is brought to a final conclusion, all other claims arising out of the same transaction . . . are barred, even if based upon different theories or seeking a different remedy.'" Application of American Tobacco Co., 880 F.2d 1520-27 (2d Cir. 1989) (quoting O'Brien v. City of Syracuse, 54 N.Y.2d 353, 357 (1981)); see also Troy v. Goord, 300 A.D.2d 1086 (4th Dept. 2002) ("[A] new claim constitutes the same cause of action as the formerly litigated claim if they arise out of the same transaction or occurrence or series of transactions or occurrences, even if the new claim is based upon a different legal theory or seeks a different remedy.").

In order for res judicata to apply, plaintiff must show that "1) the previous action involved an adjudication on the merits; 2) the previous action involved [the same parties] or those in privity with them; and 3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." Monahan v. New York City Dep't of Corrections, 214 F.3d 275, 285 (2d Cir. 2000).

Plaintiff maintains that the claims before the Appellate Division differ from those presented to this Court because the primary issue before the state court was the timeliness of Plaintiff's Article 15 application.  (Pl.'s Mem. (Docket No. 50) at 13-14.) While Plaintiff's Article 78 petition does not explicitly reference "due process", in his brief to the Appellate Division he argued that the decision of Hearing Officer Johnston was arbitrary and capricious because he failed to recognize the significance and disregarded key evidence–the same argument Plaintiff makes now before this Court. (Def.'s Exh. B (Docket No. 37-3); Complaint, ¶ 70.) Moreover, Plaintiff certainly could have raised a due process claim based upon Hevesi's alleged failure to return a timely decision in the matter, since Hevesi was the sole respondent in the earlier case. Under the transactional approach, once Plaintiff's claim was brought to a final conclusion, all other claims arising out of the same transaction, even if based upon different theories, are barred. O'Brien, 54 N.Y.2d at 357.

Finally, because Plaintiff now seeks the same relief as he did in the state court, i.e., declaratory and injunctive relief, res judicata may serve as a bar to his section 1983 action. See Johns v. Rampe, 333 Fed.Appx. 644, 646 (2d Cir. 2009) ("because Johns does not seek damages [in his federal civil rights action], the Article 78 proceedings could have provided all the relief that he seeks. Thus, Johns's constitutional claims are barred by claim preclusion."). Cf. Farid v. Bouey, 554 F.Supp.2d 301, 316 (N.D.N.Y. 2008) ("In this case it is clear, based upon well-established case authority, that the prior unfavorable Article 78 determination did not serve to foreclose the plaintiff from commencing this subsequent section 1983 civil rights action for damages, since such relief is unavailable in an Article 78 proceeding.").

Even assuming that Plaintiff's claim was not barred by res judicata principles, this Court finds on other grounds, as discussed below, that Plaintiff's fourth cause of action does not state a federal due process claim upon which relief can be granted.

### 3.    Personal Involvement

Personal involvement is a <u>sine qua non</u> of liability under § 1983. <u>See</u> <u>Haygood v. City of New York</u>, 64 F.Supp.2d 275, 280 (S.D.N.Y.1999). And it is well-settled in this Circuit that personal involvement by defendants in cases alleging constitutional deprivations is a prerequisite to an award of damages under § 1983. <u>See</u> <u>McKinnon v. Patterson</u>, 568 F.2d 930, 934 (2d Cir. 1977); <u>Richardson v. Coughlin</u>, 101 F.Supp.2d 127, 129 (W.D.N.Y. 2000). The Second Circuit defines personal involvement in this context as "direct participation, or failure to remedy the alleged wrong after learning of it, or creation of a policy or custom under which unconstitutional practices occurred, or gross negligence in managing subordinates." <u>Black v. Coughlin</u>, 76 F.3d 72, 74 (2d Cir. 1996); <u>see</u> <u>also</u> <u>Wright v. Smith</u>, 21 F.3d 496, 501 (2d Cir. 1994).

Here, Plaintiff has made no allegations that Hevesi had any role in depriving Plaintiff of a prompt hearing by a fair and informed hearing officer and a timely decision following said hearing. There is also no proof in Plaintiff's summary judgment submissions that Hevesi was involved in the alleged unconstitutional acts. Finally, Plaintiff appears to concede that he cannot establish personal liability with respect to Defendant Hevesi in his individual capacity. (Pl.'s Mem. at 16) ("The lack of personal involvement of Gallivan, Gipson, and Hevesi has no bearing on their liability in their official capacities.").   Hevesi has also been sued in his official capacity. Under the Eleventh Amendment, a state and its agencies are generally immune from suit in federal court unless the state consents to

be sued. See Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 54-59 (1996); Papasan v. Allain, 478 U.S. 265, 276 (1986). However, the Eleventh Amendment "does not preclude suits against state officers in their official capacity for prospective injunctive relief to prevent a continuing violation of federal law." Henrietta D. v. Bloomberg, 331 F.3d 261, 287 (2d Cir. 2003) (citing Ex parte Young, 209 U.S. 123, 155-56 (1908) and Green v. Mansour, 474 U.S. 64, 68 (1985)). Reinstatement to medical leave, as requested by the Plaintiff in this case, has been held to be a form of prospective equitable relief. Russell, 896 F.2d at 668. Accordingly, the Eleventh Amendment does not bar Plaintiff's claim against Hevesi in his official capacity. See, e.g., Komlosi v. New York State Office of Mental Retardation & Developmental Disabilities, 64 F.3d 810, 814 (2d Cir. 1995); Campbell v. City Univ. Construction Fund, No. 98 Civ. 5463, 1999 WL 435132, at *2 (S.D.N.Y. June 25, 1999).

### 4.    Post-Deprivation Remedy

Nonetheless, Plaintiff's claim that Hevesi failed to provide Plaintiff with a prompt hearing by a fair and informed hearing officer and did not provide Plaintiff with a timely decision following his administrative hearing does not state a due process violation.

Plaintiff's fourth cause of action is twofold: he first contends that he was denied the opportunity to be heard by a neutral and informed hearing officer, because the hearing officer that presided over the hearing resigned during the pendency of Plaintiff's case and a different hearing officer was appointed to decide the matter. According to Plaintiff, the second hearing officer did not fully understand the transcripts and exhibits upon which the redetermination was based. Second, Plaintiff contends that the one-year delay between the hearing and the date of the written decision constitutes a due process violation.

Here, Plaintiff has no claim for denial of due process because the availability of an

12

Article 78 proceeding, which Plaintiff availed himself of, constitutes an adequate post-deprivation remedy for any and all of the alleged due process violations. Hellenic Am. Neighborhood Action Comm. v. City of New York, 101 F.3d 877, 880 (2d Cir. 1996).

Due process ordinarily requires that persons receive "some kind of hearing" prior to the deprivation of a property interest. See Hodel v. Va. Surface Mining & Reclamation Ass'n., 452 U.S. 264, 299 (1981); Velez v. Levy, 401 F.3d 75, 91-92 (2d Cir. 2005); DiBlasio v. Novello, 344 F.3d 292, 302 (2d Cir. 2003); Dwyer v. Regan, 777 F.2d 825, 832 (2d Cir. 1985). However, "the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees." Hellenic Am. Neighborhood Action Comm., 101 F.3d at 880 (citing, inter alia, Hudson v. Palmer, 468 U.S. 517, 532 (1984)). "In the latter case, the Due Process Clause of the Fourteenth Amendment is not violated when a state employee intentionally deprives an individual of property or liberty, so long as the State provides a meaningful postdeprivation remedy. . . . When the deprivation occurs in the more structured environment of established state procedures, rather than random acts, the availability of postdeprivation procedures will not, ipso facto, satisfy due process." Id.

Plaintiff argues that an Article 78 proceeding does not provide an adequate post-deprivation state remedy in the instant case, relying on the Second Circuit's decision in Russell v. Dunston, supra. The plaintiff in Russell, however, challenged the fact that pre-termination notice of the discretionary discontinuance of medical leave was not provided by state law, and did not allege that random procedural error deprived him of the right to apply for benefits, which could be addressed in an Article 78 proceeding. 896 F.3d at 669; compare with Campo v. New York City Employees' Retirement Sys., 843 F.2d 96

13

(2d Cir. 1988) (holding that a state Article 78 proceeding is sufficient to provide constitutional due process for a municipal employee challenging a random procedural error in denial of retirement benefits).

While not specifically addressed by the Plaintiff, the facts, as alleged in the Complaint, are distinguishable from <u>Russell</u>. That is to say, Plaintiff does not claim that the established state procedures for reviewing determinations of Article 15 applications violate due process.  Rather, he claims that the review of his disability retirement application was tarnished because Hearing Officer Johnson "did not fully understand and/or appreciate the significant [sic] of the evidence and arguments before him," and that he was not provided with that decision until a year after the hearing was conducted. (Complaint, ¶¶ 36-37.)  This Court finds that Plaintiff's due process claims fall under the category of "random and unauthorized" due process deprivations, which can be remedied by an Article 78 proceeding. <u>See</u> <u>Whiting v. Incorporated Village of Old Brookville</u>, 8 F.Supp.2d 202 (E.D.N.Y. 1998) (allegation of impartiality of hearing officer in disciplinary hearing of municipal employee was, at most, a random and unauthorized act by a state actor, and established procedures themselves were not challenged). Because there is no constitutional violation when the state affords an adequate post-deprivation remedy for a random, arbitrary deprivation of property or liberty, Plaintiff's due process claim must be dismissed. <u>See</u>, <u>e.g.</u>, <u>Longo v. Suffolk County Police Dep't</u>, 429 F.Supp.2d 553, 559 (E.D.N.Y. 2006).

For all of the forgoing reasons, this Court finds that Defendant Hevesi is entitled to summary judgment**.**

14

**C.     The County Defendants**

The County Defendants move for summary judgment on the grounds that the action is time-barred, that Plaintiff has not stated a procedural due process violation, that the County Defendants were not personally involved in the alleged unconstitutional acts, and on the basis of qualified immunity. (Docket No. 41.)

**1.     Statute of Limitations**

In New York, claims pursuant to 42 U.S.C. § 1983 are subject to a three year statute of limitations. Shomo v. City of New York, 579 F.3d 176, 181 (2d Cir. 2009). A § 1983 claim ordinarily accrues when the Plaintiff knows or has reason to know of the harm. Id. The proper focus is on the time of the unlawful act and when Plaintiff knows or has reason to know of the injury that is the basis of the action; not when the consequences become painful. Eagleston v. Guido, 41 F.3d 865, 871 (2d Cir. 1994).

Plaintiff's fourth cause of action alleges that the County Defendants failed to provide "accurate and correct information in support of or in response to plaintiff's application for disability retirement benefits." His declaration states that he learned of the inaccuracies during one of the administrative hearings held by the State Comptroller between February and October 2003, the time period during which the application would have been discoverable, thereby making his Complaint timely-filed on April 29, 2005.

While the County Defendants urge this Court to apply the statute of limitations from the date that Comptroller's Office stamped Plaintiff's Article 15 application as "received", (April 18, 2002), there is nothing in their submissions to suggest that Plaintiff received a carbon-copy of that document or otherwise could have become aware of the erroneous

data contained in the form on that date.

The Court finds that Plaintiff had reason to know of the inaccuracies only after the Article 15 application was denied and subject to an administrative hearing. The commencement of this suit, filed on April 29, 2005, with regard to Plaintiff's fourth cause of action only, is therefore timely.

### 2. Due Process Violation

The gravamen of Plaintiff's fourth cause of action against the County Defendants is their alleged denial of due process to Plaintiff when they provided inaccurate and incorrect information to the State Comptroller's Office in connection with Plaintiff's Article 15 Application, which, Plaintiff claims, caused undue delay in processing his application for benefits. The document submitted in support of this claim is a form entitled "Payroll Status Request of Employer", prepared by Dennis Clark, Deputy Sheriff Officer and sent to NYSLRS. According to Plaintiff, the form incorrectly states that Plaintiff's termination date was May 20, 1999, the date of Plaintiff's last day on the payroll. That form was prepared on August 28, 2001, and Plaintiff's application was denied as untimely on May 2, 2002, over eight months later. (Hayden Decl. (Docket No. 49), ¶¶10-12.)

First, and most importantly, Plaintiff points to no evidence, let alone allege any facts, to support a nexus between the incorrect date input on the form and the delay in the decision from NYSLRS. Plaintiff's surmising alone is insufficient to preclude summary judgment. See ITC Ltd. v. Punchgini, Inc., 482 F.3d 135, 151 (2d Cir.) ("conclusory statements, conjecture, and inadmissible evidence are insufficient to defeat summary judgment"), cert. denied, 552 U.S. 827 (2007).

Second, the fact that information provided indicated that Plaintiff's termination date

16

was May 20, 1999, and not August 1, 2000, is of no moment. A redetermination of the NYSLRS initial decision denying Plaintiff's application calculated the relevant limitation period to run from August 1, 2000, and the application was found to be untimely. Considering the facts in the light most favorable to Plaintiff, the alleged incorrect data on Plaintiff's Article 15 Application cannot form the basis of a due process violation.

### 3. Personal Involvement

Plaintiff concedes that the named County Defendants, Gallivan and Gipson, were not personally involved in the alleged due process deprivations.  (Pl.'s Mem. at 16). Accordingly, Plaintiff's cause of action against the County Defendants in their individual capacities cannot be maintained.

### 4. Qualified Immunity

Because the Court agrees that the County Defendants are entitled to judgment as a matter of law on the grounds that Plaintiff failed to establish a due process violation and that they were not personally involved in the alleged violation, the Court need not reach the issue of whether the County Defendants are entitled to qualified immunity.

## IV. CONCLUSION

For the foregoing reasons, the Defendants in this action are entitled to summary judgment in their favor.

## V.  ORDERS

IT HEREBY IS ORDERED, that Hevesi's Motion for Summary Judgment (Docket No. 34)  is GRANTED.

FURTHER, that the County Defendants' Motion for Summary Judgment (Docket No.

39) is also GRANTED.

FURTHER, that the case is DISMISSED.

FURTHER, that the Clerk of the Court is directed to close this case.

SO ORDERED.

Dated:   October 16, 2011
          Buffalo, New York

<u>/s/William M. Skretny</u>
WILLIAM M. SKRETNY
Chief Judge
United States District Court